IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

FILED

2011 FEB -2  P 4: 04

CLE... ...
ALEXA... ... ...

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO.: *1:11cv118* |
| ALL FUNDS ON DEPOSIT IN | ) *CmH/TRJ* |
| FOUR SWISS BANK ACCOUNTS | ) |
| Numbered 0251-647546-6, | ) |
| 0251-647546-62-1, | ) |
| 0251-647546-61-1, and | ) |
| 0251-647546-6-1 under the name | ) |
| Sunnyweather Ltd. at Credit Suisse, | ) |
| Geneva, Switzerland and All Proceeds | ) |
| Traceable Thereto | ) |
| | ) |
| | ) |
| **Defendants *in Rem.*** | ) |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, through its undersigned attorneys, respectfully files

this Complaint for forfeiture against the above-captioned assets and alleges as follows:

### I. NATURE OF THE ACTION

1.      This civil action *in rem* is brought by the United States to enforce the provisions of 18

U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) and forfeit all funds, up to and including approximately

$3,340,200 deposited in accounts 0251-647546-6, 0251-647546-62-1, 0251-647546-61-1, and

0251-647546-6-1 at Credit Suisse in Geneva, Switzerland, under the name Sunnyweather Ltd.

plus any accrued interest and proceeds traceable thereto (the "Defendants in Rem").

2.      The Defendants in Rem are subject to forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and

981(a)(1)(C) because, as set forth herein: (1) they constitute proceeds of or are derived from

proceeds traceable to offenses constituting specified unlawful activities as defined in 18 U.S.C.

§ 1956 (c)(7)(A), namely wire fraud (18 U.S.C. § 1343), interstate or international transportation

of stolen property (18 U.S.C. § 2314), and securities fraud (15 U.S.C. § 78j(b) and 17 C.F.R.

§ 240.10b-5), or conspiracy to commit one or more of such specified unlawful activities; and (2)

they were involved in one or more transactions or attempted transactions in violation of 18 U.S.C.

§§ 1956 and 1957 (money laundering) or are traceable to property involved in such transactions.

## II. PROPERTY SUBJECT TO FORFEITURE

3.      The Defendants in Rem are the contents of accounts numbered 0251-647546-62-1, 0251-

647546-61-1, 0251-647546-6-1, and 0251-6475462-1, in the name of Sunnyweather Ltd. at Credit

Suisse Bank, Geneva, Switzerland (hereinafter "the Sunnyweather accounts") and include any

interest accrued on the deposited funds and all proceeds traceable to the deposited funds.  The

funds were deposited into the above accounts between March and May of 2006 by wire transfer

from an account at Wachovia Bank in Plantation, Florida, in the name of International Accredited

Investment Club.

## III. JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1345 (district

courts have original jurisdiction over all civil proceedings actions by the United States) and

1355(a) (district courts have jurisdiction over all actions for forfeiture).

5.      Venue is proper pursuant to 28 U.S.C. §§ 1355(b) and 1395.

6.      This civil action *in rem* for forfeiture is governed by 18 U.S.C. §§ 981 and 983, and Rule

G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## IV. FACTS

7.    An investigation conducted by the Federal Bureau of Investigation (hereinafter "FBI") has revealed that between approximately 2000 and 2007, Stanley Shew-A-Tjon, his brother Ivan Shew-A-Tjon (collectively the "Shew-A-Tjons"), and several other individuals were operating a fraudulent investment scheme involving several investment vehicles, all operated under an umbrella organization using the name "Caruba" (hereinafter collectively referred to as "Caruba"). The investigation determined that the Defendants in Rem are the proceeds of or are derived from proceeds traceable to specified unlawful activities engaged in as part of the Caruba scheme, namely, wire fraud (18 U.S.C. § 1343), the interstate or international transportation of stolen property (18 U.S.C. § 2314), and securities fraud (15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5); a conspiracy to commit one or more such offenses and were involved in money laundering (18 U.S.C. §§ 1956 and 1957).

8.    The wire fraud statute, 18 U.S.C. § 1343, prohibits transmission of a writing, sign, signal, picture, or sound by means of wire, radio, or television communication in interstate or foreign commerce to execute a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.  Wire communications include internet and email communications and the wire or electronic transfer of funds.

9.    Interstate or international transportation of stolen property is prohibited by 18 U.S.C. § 2314 when it involves the transportation, transmission, or transfer of any goods, securities, or money valued at more than $5,000 in interstate or foreign commerce with the knowledge that the transmitted property was stolen, converted, or taken by fraud.

10.    The Securities Exchange Act of 1934 prohibits the use of any instrumentality of interstate commerce in connection with the purchase or sale of a security where that use employs a scheme

3

or artifice to defraud; makes an untrue statement or material omission; or involves any act, practice or course of business that operates or would operate as a fraud on any person. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

11.   Under the Securities Exchange Act of 1934, a "security" includes, among other things, any bond or investment contract. 15 U.S.C. § 78c(a)(10). Investment contracts include anything that investors purchase where the investors expect profits generated by a common enterprise which depend on the efforts of others. *Robinson v. Glynn*, 349 F.3d 166, 169–70 (4th Cir. 2003).

12.   Caruba and its principals are subject to cease and desist orders based on evidence of the unlawful sale of securities and for dishonest and/or fraudulent practices in the sale of securities from the following regulators: Pennsylvania Securities Commission; the Division of Banking, Securities, and Corporations of the Department of Community and Economic Development of the State of Alaska; the Alabama Securities Commission; the Securities Commissioner of South Carolina; the Iowa Insurance Commissioner; and the Commissioner of Securities for the State of Montana.

### *Fraud Schemes*

13.   At all times relevant to this Complaint, an organization called Caruba was run by Stanley and Ivan Shew-A-Tjon and their co-conspirators. This organization was promoted as an educational and investment club. Four different legal entities using the name "Caruba" (three limited liability companies and a corporation) were registered in Florida between 2000 and 2007; Ivan Shew-A-Tjon was a manager or director of three. The fourth was nominally directed by one of the Shew-A-Tjon's co-conspirators in the Caruba fraud.

14.   The Shew-A-Tjons and their co-conspirators ran Caruba as a pyramid scheme that incorporated one or more Ponzi schemes. After being invited by an existing member, members

joined Caruba by paying a fee of approximately $1,200. Caruba paid existing members

commissions for every new member they recruited. Caruba also paid commissions to existing

members whose recruits went on to solicit new members. Commissions were paid by mailed

checks or via wire transfers passing in interstate commerce.

15.     Caruba memberships qualify as investment contracts because Caruba members expected to

benefit from efforts primarily made by third parties (namely, their recruits to the club). As

investment contracts, Caruba memberships qualify as securities under the Securities Exchange

Act of 1934 as detailed in paragraph 11 above.

16.     Caruba membership gave members access to Caruba events where club leaders, including

Ivan and Stanley Shew-A-Tjon, would give presentations about investing and the unique

"investment opportunities" available to Caruba members. Caruba advertised its investments in

multiple states via its website and electronic newsletter. Members could purchase Caruba's

investments from anywhere in the world through the Caruba website, transferring funds for

investment via wire or other electronic transfer in interstate commerce.

17.     Caruba's principals, including Ivan Shew-A-Tjon, told investors that their investment funds

were being pooled to increase their anticipated returns. Based on representations made by

Caruba's promoters and in Caruba's investment materials, members expected very high monthly

or annual returns, often exceeding ten percent or more depending on their chosen investment

vehicle. The members did not directly control their investments; instead, members' profits

depended on the actions of the investment's managers. Thus Caruba's investments, including

International Accredited Investment Club, described below, were also investment contracts and

therefore qualify as securities under the Securities Exchange Act of 1934 as detailed in paragraph

11 above.

18.   International Accredited Investment Club (hereinafter "IAIC") was one of several

investment opportunities offered through Caruba. According to corporate records and witness

statements, Stanley Shew-A-Tjon managed and promoted IAIC.

19.   Caruba members either wired funds for investment in IAIC from their accounts located in

Virginia and other states to an account under the IAIC's name at a Wachovia branch in Plantation,

Florida, or sent checks to Caruba's business office for investment with IAIC.

20.   IAIC was promoted variously as an investment in bonds, real estate, gold, or foreign

currencies.

21.   In reality, IAIC and its managers did not invest most, if not all, of the funds sent to IAIC.

Instead, IAIC's managers were keeping IAIC, Caruba, and other Caruba investments afloat by

using the new investment funds paid in by members to make dividend and commission payments

to other Caruba members and to benefit Caruba's principals, including Stanley Shew-A-Tjon,

personally. Notably, any funds invested by IAIC were not placed with the investments touted by

Caruba's principals and promotional materials.

22.   To further the scheme, IAIC gave its investors access to bogus online account statements,

providing investors with an ongoing stream of false information purporting to illustrate that their

funds were invested and earning the promised returns. Because IAIC had not invested these

funds as promised, these electronic account statements conveyed false information via wire in

interstate and international commerce as part of the execution of the fraudulent scheme.

23.   Eventually, IAIC's promoters were either unable or unwilling to continue the fraud.

Beginning in late 2005 or early 2006, IAIC investors discovered that they were not able to

withdraw the funds shown as being in their accounts on their investment statements. The dividend

payments some members had been receiving also stopped. Since that time, investors have been unable to recover their funds.

24. In short, Caruba members purchased investments in IAIC based on the false representations by Caruba's principals asserting that the funds paid into the IAIC account were being invested in a legitimate investment vehicle, were earning certain dividends, and would result in long-term growth. In reality, most, if not all, of the funds were not being invested, but were instead being used to keep IAIC and Caruba's fraudulent schemes running and to personally benefit Caruba's principals, including Stanley Shew-A-Tjon. Many of the false representations that convinced investors to invest their money in IAIC were made over the internet or were transferred via electronic mail, making them fraudulent communications made via wire in interstate commerce. These fraudulent statements were made in connection with sales of securities. In addition, the funds used to purchase shares in IAIC were transferred via wire or other form of electronic transfer across state lines, making them transfers in interstate commerce.

25. The victims of the Caruba fraud included multiple individuals residing in the Eastern District of Virginia, as well as residents of several other states of the United States. These victims include both those who simply paid to join the Caruba investment club and those who both joined the club and invested in IAIC.

*Transfer and Money Laundering of Fraud Proceeds*

26. Sunnyweather Ltd. was incorporated in the British Virgin Islands, was not advertised or promoted as a Caruba investment vehicle, and appears to be simply a shell company designed to hold funds.

27. In February 2006, a corporate services provider opened account 0251-647546-6 in the name of Sunnyweather Ltd. at Credit Suisse in Geneva, Switzerland. Stanley Shew-A-Tjon, the

director and promoter of IAIC and a principal of Caruba, is the beneficial owner of this account. This account eventually came to encompass several related or sub-accounts held in the name of Sunnyweather Ltd. which compose the Defendants in Rem in this case.

28.     Between March and May of 2006, at least five wires were made from the IAIC account at the Wachovia Bank branch in Plantation, Florida, to the Sunnyweather accounts.  These transfers were made in amounts between $200,100 and $1,250,000.  In total, at least $3,340,200 which had been sent by fraud victims for investment in IAIC was wired in international commerce from the IAIC account in Plantation, Florida to the Sunnyweather accounts in Geneva, Switzerland.

## V.  REQUEST FOR RELIEF

29.     Therefore, the Defendants in Rem, plus any accrued interest and any property traceable to such funds, should be forfeited to the United States because a preponderance of the evidence shows:

### First Claim for Relief
(18 U.S.C. §§ 981(a)(1)(C) and 1343)

30.     Plaintiff repeats allegations of paragraphs 1 through 29 as if fully set forth herein.  The Defendants in Rem are the proceeds of or are derived from a violation of 18 U.S.C. § 1343 (wire fraud), a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7), or a conspiracy to commit such offense and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

### Second Claim for Relief
(18 U.S.C. §§ 981(a)(1)(C) and 2314)

31.     Plaintiff repeats allegations of paragraphs 1 through 29 as if fully set forth herein.  The Defendants in Rem are the proceeds of or are derived from a violation of 18 U.S.C. § 2314 (interstate transportation of stolen property), a specified unlawful activity as defined in 18 U.S.C.

§§ 1956(c)(7), or a conspiracy to commit such offense and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

### Third Claim for Relief
(18 U.S.C. § 981(a)(1)(C) and 15 U.S.C. § 78j(b))

32.    Plaintiff repeats allegations of paragraphs 1 through 29 as if fully set forth herein.  The Defendants in Rem are the proceeds of or are derived from a violation of 15 U.S.C. § 78j(b) and its implementing regulation 17 C.F.R. § 240.10b-5 (securities fraud), a specified unlawful activity as defined in § 1956(c)(7), or a conspiracy to commit such offense and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

### Fourth Claim for Relief
(18 U.S.C. §§ 981(a)(1)(A) and 1956(a)(1)(B))

33.    Plaintiff repeats allegations of paragraphs 1 through 29 as if fully set forth herein.  The Defendants in Rem were involved in or are traceable to property involved in the laundering of the proceeds of wire fraud in violation of 18 U.S.C. § 1343; interstate transportation of stolen property in violation of 18 U.S.C. § 2314; securities fraud in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; or any combination of the above offenses, in violation of 18 U.S.C. § 1956(a)(1)(B) in that they were knowingly involved in transactions conducted to conceal or disguise the nature, location, source, ownership, or control of the involved property.  The Defendants in Rem are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. §981(a)(1)(A).

### Fifth Claim for Relief
(18 U.S.C. §§ 981(a)(1)(A) and 1956(a)(2)(B))

34.    The Plaintiff repeats allegations of paragraphs 1 through 29 as if fully set forth herein. The Defendants in Rem were involved in or traceable to property transmitted to a place outside the United States from or through a place inside the United States with (1) the knowledge that the

funds represented the proceeds of unlawful activity, namely wire fraud, securities fraud, and/or

interstate transport of stolen property; and/or (2) the transfer was designed in whole or in part to

conceal or disguise the nature, location, source, ownership, or control of the proceeds of one or

more specified unlawful activities, including wire fraud in violation of 18 U.S.C. § 1343;

interstate transportation of stolen property in violation of 18 U.S.C. § 2314; or securities fraud in

violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, in violation of 18 U.S.C.

§ 1956(a)(2)(B). The Defendants in Rem are therefore subject to forfeiture to the United States

pursuant to 18 U.S.C. § 981(a)(1)(A).

**Sixth Claim for Relief**
(18 U.S.C. §§ 981(a)(1)(A) and 1957(a))

35.     Plaintiff repeats allegations of paragraphs 1 through 29 as if fully set forth herein. The

Defendants in Rem were involved in or traceable to property involved in transactions valued at

more than $10,000 with the knowledge that the property was derived from one or more specified

unlawful activities, including wire fraud in violation of 18 U.S.C. § 1343; interstate transportation

of stolen property in violation of 18 U.S.C. § 2314; or securities fraud in violation of 15 U.S.C.

§ 78j(b) and 17 C.F.R. § 240.10b-5; and the property was transferred in interstate or foreign

commerce through a financial institution violation of 18 U.S.C. § 1957(a). The Defendants in

Rem are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, Plaintiff requests as follows:

(1)     That a Warrant of Arrest *in Rem* in the form submitted with this Verified

Complaint be issued to the Attorney General of the United States to arrest the Defendants in Rem;

(2)     That due notice be given to any and all persons having a potential claim to the

Defendants in Rem to file and serve their Verified Claims and Answer as required by 18 U.S.C.

§ 983(a)(4) and the Supplemental Rules for Certain Admiralty Claims or suffer default thereof;

10

(3)     That a Judgment of Forfeiture be entered declaring the Defendants in Rem

forfeited to the United States of America for disposition according to law and that, pursuant to 18

U.S.C. § 981(f), all right, title, and interest in the Defendants in Rem vested in the United States

upon the commission of the first act giving rise to forfeiture; and

(4)     That the United States of America be granted such other reliefs as this Court may

deem just and proper, together with the costs and disbursements of this action.

Dated: 2 February, 2011.

                                   Respectfully submitted,

                                   NEIL H. MACBRIDE
                                   UNITED STATES ATTORNEY


                                   By: KAREN LEDBETTER TAYLOR
                                   Assistant U.S. Attorney
                                   Eastern District of Virginia
                                   201 Jamieson Avenue
                                   Alexandria, VA 22314-5794
                                   Telephone: (703) 299-3700


                                   JENNIFER SHASKY CALVERY, CHIEF
                                   ASSET FORFEITURE AND
                                       MONEY LAUNDERING SECTION
                                   PAMELA J. HICKS
                                   Trial Attorney
                                   Asset Forfeiture and Money
                                       Laundering Section
                                   Criminal Division
                                   United States Department of Justice
                                   1400 New York Avenue, N.W., 10th Floor
                                   Washington, D.C. 20530
                                   Telephone: (202) 514-1263
                                   Attorney for Applicant
                                   UNITED STATES OF AMERICA

## VERIFICATION

City of Washington   )
District of Columbia  )

      I, Debra L. LaPrevotte, being duly sworn, deposed and says that I am a Special Agent with

the Federal Bureau of Investigation in Washington, D.C.. I have read the foregoing Verified

Complaint for forfeiture and declare under penalty of perjury of the laws of the United States of

America that it is true and correct to the best of my knowledge, information and belief, the source

of my knowledge, information and belief being my personal involvement in the investigation, my

review of the reports furnished to me from other law enforcement officers familiar with the case,

and my conversations with other law enforcement officers familiar with the case.

Date: __2nd__ February, 2011


      Debra L. LaPrevotte, Special Agent
      Federal Bureau of Investigation

12