IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11cv118 (CMH/TRJ) |
| | ) | |
| All Funds on Deposit in | ) | |
| Four Swiss Bank Accounts | ) | |
| Numbered 0251-647546-6, | ) | |
| 0251-647546-62-1, | ) | |
| 0251-647546-61-1, and | ) | |
| 0251-647546-6-1 | ) | |
| Under the Name Sunnyweather Ltd. at | ) | |
| Credit Suisse, Geneva, Switzerland and | ) | |
| All Proceeds Traceable Thereto, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the court on plaintiff's request for default judgment and order of

forfeiture (no. 7).  The subject property is held at Credit Suisse in Geneva, Switzerland in

accounts nos. 0251-647546-6, 0251-647546-62-1, 0251-647546-61-1, and 0251-647546-6-1 in

the name of Sunnyweather Ltd.  Plaintiff filed a verified complaint *in rem* for civil forfeiture

pursuant to 18 U.S.C. §981(a)(1)(A) and (C) on February 2, 2011 (no. 1).  The Clerk issued a

warrant for arrest *in rem* on February 3, 2011 (no. 3) pursuant to Rule G(3)(b)(ii) of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Plaintiff

requested assistance with serving the warrant from the government of Switzerland, which served

the warrant on Credit Suisse AG by methods consistent with Swiss law, in accordance with Fed.

R. Civ. P. Supp. R. G(3)(c)(iv).  On February 8, 2011, in accordance with Fed. R. Civ. P. Supp.

R. G(4)(b)(i), plaintiff sent written notices of civil forfeiture as well as copies of the verified

complaint to Stanley Shew-A-Tjon and Sunnyweather Ltd., each of whom reasonably appeared

to be potential claimants of the subject property, via FedEx.  Plaintiff also published notice of

this civil forfeiture action on www.assetforfeiture.gov for 30 consecutive days beginning on

February 9, 2011 in accordance with Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C) (no. 4).  No person

or entity has filed a claim or an answer to the complaint.  The Clerk entered default on August

10, 2011 (no. 6).  Upon consideration of plaintiff's motion and the memorandum in support

thereof, the magistrate judge makes findings as follows and recommends that default judgment

be entered.

## Jurisdiction and Venue

This court has jurisdiction pursuant to 28 U.S.C. § 1345 because this action was

commenced by the United States, and 28 U.S.C. § 1355 because this is an action for forfeiture.

There is *in rem* jurisdiction pursuant to 28 U.S.C. § 1355(b)(2), as (1) venue is proper pursuant to

28 U.S.C. § 1355(b)(1)(A) because acts giving rise to forfeiture occurred in this district; and (2)

there is constructive control over the foreign assets at issue pursuant to the service of the warrant

of arrest discussed *supra*.  *See United States v. All Funds in Account Nos. 747.034/278,*

*747.009/278, & 747.714/278 in Banco Español de Credito, Spain*, 295 F.3d 23, 26 (D.C. Cir.

2002) (holding that 28 U.S.C. § 1355(b)(2) grants jurisdiction where venue is proper under 28

U.S.C. § 1355(b)(1)); *Contents of Account Number 03001288 v. United States*, 344 F.3d 399,

403-04 (3d Cir. 2003) (same); *United States v. Approximately $1.67 Million (US) in Cash, Stock,*

*and Other Valuable Assets*, 513 F.3d 991, 998 (9th Cir. 2008) (same); *United States v. All Funds*

*on Deposit in Any Accounts Maintained in the names of Meza or De Castro*, 63 F.3d 148, 152-53

(2d Cir. 1995) (holding that 28 U.S.C. § 1355(b)(2) only grants jurisdiction where the court has constructive control over the assets).

## Appropriateness of Default Judgment

Federal Rule of Civil Procedure 55 permits the court to grant a motion for default judgment where the well-pled allegations of the complaint establish plaintiff's entitlement to relief, and where a defendant has failed to plead or defend as provided by and within the time frames contained in the rules. *Music City Music v. Alfa Foods, Ltd.,* 616 F. Supp. 1001, 1002 (E.D. Va. 1985); Fed. R. Civ. P. 55. In the civil forfeiture context, default judgment is permitted where no potential claimant has filed a response to the complaint. *See United States v. $3,500.00 in U.S. Currency*, No. 5:07-CV-312-F, 2008 WL 215807, at *1 (E.D.N.C. Jan. 24, 2008) (Order); *United States v. 47 W. Oakview Rd.*, No. 1:10-CV-88, 2011 WL 304972, at *1 (W.D.N.C. Jan. 28, 2011); *United States v. $36,110.00 in U.S. Currency*, No. 4:08-CV-0029, 2010 WL 6065117, at *2 (D.S.C. Dec. 17, 2010) (Report and Recommendation). As discussed *supra*, no potential claimant has filed a response to the complaint, and entry of default judgment is therefore permitted.

## Factual Background

A defendant in default, and a claimant who fails to assert a claim *in rem*, is deemed to have admitted all of the plaintiff's well-pleaded allegations of fact, which then form the basis for judgment in the plaintiff's favor. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing *Ryan*); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has effect of admitting factual allegations in complaint); *Marion County Court v. Ridge*, 13 F.2d 969,

971 (4th Cir. 1926) (default admits well-pleaded facts) (citations omitted).

The following facts are established by the complaint's well-pleaded allegations of fact.

The Federal Bureau of Investigation ("FBI") conducted an investigation between 2000 and 2007 of an umbrella organization known as "Caruba" and operated by two brothers, Stanley and Ivan Shew-A-Tjon, and other individuals.  Compl. ¶ 7.  Caruba was advertised as an educational and investment club.  Compl. ¶ 13.  Four legal entities using the "Caruba" name were registered in Florida between 2000 and 2007, three of which named Ivan Shew-A-Tjon as a manager or director.  Compl. ¶ 13.

Members joined Caruba by paying a fee of approximately $1,200.00 after receiving an invitation from an existing member.  Compl. ¶ 14.  Members were paid commissions for every new member they recruited, as well for any new members that those new members recruited.  Compl. ¶ 14.  Those commissions were paid via mailed checks or wire transfers.  Compl. ¶ 14.  Membership in Caruba gave members access to events where club leaders gave presentations about investment opportunities.  Compl. ¶ 16.  Caruba advertised its investments through a website and electronic newsletter.  Compl. ¶ 16.  Members purchased investments by transferring funds to Caruba, which they could accomplish by wire or other electronic transfer.  Compl. ¶ 16.

Caruba's principals told members that their funds were pooled to increase anticipated monthly or annual returns, which were often represented to be ten percent or more.  Compl. ¶ 17.  Members did not directly control their investments; rather, investments were to be made by Caruba managers.  Compl. ¶ 17.

One of Caruba's offered investment opportunities was known as International Accredited Investment Club ("IAIC"), which was managed and promoted by Stanley Shew-A-Tjon.  Compl. ¶ 18.  Caruba members, who resided in several states, including Virginia, invested funds either

by wiring funds to an IAIC account at a Wachovia branch in Florida or by sending checks to Caruba's business office.  Compl. ¶¶ 19, 25.  IAIC was promoted as an investment in bonds, real estate, gold, or foreign currencies, but most, if not all, IAIC funds were not invested at all, and none were invested in the vehicles promoted by Caruba's principals and advertising materials. Compl. ¶¶ 20-21.  Rather, the funds were used to make dividend and commission payments to Caruba members, and to benefit Caruba's principals, including Stanley Shew-A-Tjon.  Compl. ¶ 21.  IAIC gave its investors access to false online account statements that showed their investments were producing returns.  Compl. ¶ 22.

Beginning in late 2005 and early 2006, IAIC investors discovered they could not withdraw funds as shown on their statements.  Compl. ¶ 23.  Dividend payments also stopped. Compl. ¶ 23.  Investors have been unable to recover their funds since that time.  Compl. ¶ 23.

In February 2006, a corporate services provider opened a bank account, no. 0251-647546-6, at Credit Suisse in Geneva, Switzerland in the name of Sunnyweather Ltd., a corporation incorporated in the British Virgin Islands.  Compl. ¶¶ 26-27.  Stanley Shew-A-Tjon is the beneficial owner of the account, which eventually encompassed several related or sub-accounts in the name of Sunnyweather Ltd.  Compl. ¶ 27.  The funds in those accounts are the subject of this matter.  Compl. ¶ 27.  Between March and May 2006, at least five wire transfers were made from the IAIC account at a Wachovia branch in Florida to the Sunnyweather Ltd. accounts at Credit Suisse, in amounts varying from $200,100.00 to $1,250,000.00 and totaling at least $3,340,200.00.  Compl. ¶ 28.

### Standard

When, as here, the action is *in rem* and the United States seeks forfeiture, the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be

able to meet its burden of proof at trial."  Fed. R. Civ. P. Supp. R. G(2)(f).  Plaintiff seeks civil

forfeiture in this matter pursuant to 18 U.S.C. § 981, and therefore must "demonstrat[e] probable

cause that a substantial connection exists between the property seized and the underlying

criminal activity."  *United States v. $3,000.00 in Cash*, 906 F. Supp. 1061, 1065 (E.D. Va. 1995)

(Ellis, J.) (citing *Boas v. Smith*, 786 F.2d 605, 609 (4th Cir. 1986)).  Plaintiff has provided an

appropriate basis for judgment by providing sufficiently detailed facts to support a finding of

probable cause that the defendant funds (1) are the proceeds of or are derived from proceeds

traceable to wire fraud, interstate or international transportation of stolen property, securities

fraud, or conspiracy to commit one of more of those unlawful activities; and (2) were involved in

one or more transactions or attempted transactions of money laundering or are traceable to

property involved in such transactions.

## Discussion and Findings

The magistrate judge makes the following findings:

First, the magistrate judge finds that there is probable cause to believe that there is a

substantial connection between the defendant funds and acts of wire fraud pursuant to 18 U.S.C.

§ 1343.  18 U.S.C. § 1343 prohibits transmissions "by means of wire, radio, or television

communication in interstate or foreign commerce, any writings, signs, signals, pictures, or

sounds for the purpose of executing" a "scheme or artifice to defraud, or for obtaining money or

property by means of false or fraudulent pretenses, representations, or promises[.]"  The verified

complaint describes a classic Ponzi scheme, which was advertised by a website and electronic

newsletter that reached victims in multiple states, including Virginia.  Thus, the verified

complaint establishes that transmissions were made in interstate commerce for the purpose of

executing a fraudulent scheme, thereby violating 18 U.S.C. § 1343.  The verified complaint also

states that the defendant funds are located in foreign bank accounts opened around the time the scheme began unraveling and having as their beneficial owner a principal in the Caruba operation responsible for carrying out the scheme.  There is therefore probable cause to believe that there is a substantial connection between the defendant funds and wire fraud in violation of 18 U.S.C. § 1343.

Second, the magistrate judge finds that there is probable cause to believe that there is a substantial connection between the defendant funds and acts of interstate or international transportation of stolen property pursuant to 18 U.S.C. § 2314.  18 U.S.C. § 2314 prohibits "transport[ing], transmit[ting], or transfer[ring] in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value $5,000 or more, knowing the same to have been stolen, converted or taken by fraud[.]" The verified complaint establishes that the defendant funds are in excess of $5,000.00 and were transferred from an IAIC account at a Wachovia branch in Florida to Credit Suisse in Switzerland.  As discussed *supra*, the verified complaint establishes that IAIC was a fraudulent scheme, and the accounts to which the funds were transferred have as their beneficial owner a principal in the operation carrying out that fraudulent scheme.  There is therefore probable cause to believe that there is a substantial connection between the defendant funds and transportation of stolen property in violation of 18 U.S.C. § 2314.

Third, the magistrate judge finds that there is probable cause to believe that there is a substantial connection between the defendant funds and acts of securities fraud pursuant to 15 U.S.C. § 78j(b).  15 U.S.C. § 78j(b) prohibits the use of "any manipulative or deceptive device or contrivance" in the purchase or sale of securities in interstate commerce in contravention of rules prescribed by the Securities and Exchange Commission.  17 C.F.R. § 240.10b-5, promulgated

pursuant to 15 U.S.C. § 78j, prohibits (a) the use of "any device, scheme, or artifice to defraud," (b) making an "untrue statement of material fact" or omitting a material fact, or (c) "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 15 U.S.C. § 78c(a)(10) defines a "security" as, *inter alia*, an investment contract, which the Fourth Circuit has interpreted to mean a scheme in which a party invests money in a common enterprise that is expected to generate profits by the work of a third party. *Robinson v. Glynn*, 349 F.3d 166, 170 (4th Cir. 2003). The investment club, IAIC, described in the verified complaint falls within the definition of "investment contract" as described by the Fourth Circuit, as members invested money with the expectation of returns from investments made by IAIC managers in bonds, real estate, gold, or foreign currencies. Accordingly, investments in IAIC involved the purchase and sale of securities within the meaning of 15 U.S.C. § 78c(a)(10). As discussed *supra*, the verified complaint establishes that IAIC was a fraudulent scheme, and it therefore fits within the scope of prohibited activities described in 17 C.F.R. § 240.10b-5 and accordingly violates 15 U.S.C. §78j(b). Also as discussed *supra*, the accounts to which the funds were transferred have as their beneficial owner a principal in the operation carrying out that fraudulent scheme. There is therefore probable cause to believe that there is a substantial connection between the defendant funds and acts of securities fraud in violation of 15 U.S.C. § 78j(b).

Fourth, the magistrate judge finds that there is probable cause to believe that there is a substantial connection between the defendant funds and a conspiracy to commit the acts discussed *supra*. As the Fourth Circuit has stated, "The elements of a conspiracy charge are: (1) an agreement among the defendants to do something which the law prohibits; (2) the defendants' knowing and willing participation in the agreement; and (3) an overt act by one of the

conspirators in furtherance of the agreement's purpose." *United States v. Moussaoui*, 591 F.3d

263, 296 (4th Cir. 2010) (citing *United States v. Hedgepeth*, 418 F.3d 411, 420 (4th Cir. 2005)).

The verified complaint establishes that multiple individuals, namely, Stanley and Ivan Shew-A-

Tjon and others, were responsible for the fraudulent Caruba operation and IAIC, which was a

Caruba enterprise. Caruba's principals knowingly made false statements about the nature of

IAIC. Finally, as discussed *supra*, the accounts to which the funds were transferred have as their

beneficial owner a principal in the operation carrying out the fraudulent scheme. There is

therefore probable cause to believe that there is a substantial connection between the defendant

funds and a conspiracy to commit the acts discussed *supra*.

Fifth, the magistrate judge finds that there is probable cause to believe that there is a

substantial connection between the defendant funds and acts of money laundering in violation of

18 U.S.C. §§ 1956(a)(1)(B), (a)(2)(B), and 1957(a). 18 U.S.C. §§ 1956(a)(1)(B) and (a)(2)(B)

prohibit conducting a domestic or international financial transaction with funds known to be the

proceeds of certain illegal activities including those discussed *supra* for purposes of concealment

or avoiding reporting requirements. 18 U.S.C. § 1957(a) prohibits knowingly conducting a

monetary transaction with property of a value greater than $10,000.00 derived from certain

criminal activities including those discussed *supra*. The verified complaint establishes that there

were several wire transfers, in amounts varying from $200,100.00 to $1,250,000.00 and totaling

at least $3,340,200.00, from the account of the fraudulent IAIC operation in Florida to an account

in Switzerland in the name of Sunnyweather, Ltd., a British Virgin Islands corporation that bears

no immediately apparent relation to IAIC or Caruba, which operated IAIC. A principal in the

Caruba operation is named as the beneficial owner of the Sunnyweather account. There is

therefore probable cause to believe that there is a substantial connection between the defendant

funds and acts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B), (a)(2)(B), and 1957(a).

### Recommendation

The magistrate accordingly recommends that default judgment be entered against the defendant funds and that the defendant funds be forfeited to the United States pursuant to 18 U.S.C. § 981.

### Notice

By means of the court's electronic filing system, and by mailing a copy of this report and recommendation to the potential claimants named above at their last known addresses, the parties are notified as follows.  Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation.  A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

_____
                                    /s/
                          Thomas Rawles Jones, Jr.
                          United States Magistrate Judge

October 26, 2011
Alexandria, Virginia